IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DANA ROLAN,<br><br>    Plaintiff,<br><br> vs.<br><br>NEW WEST HEALTH SERVICES,<br><br>    Defendant. | CV 15–51–H–CCL<br><br><br>ORDER |

Before the Court is Plaintiff Dana Rolan's Motion to Remand all or part of this case to Montana state district court. The motion is opposed. Plaintiff requests a hearing on the motion, but the Court has determined that the motion is suitable for decision without oral argument.

Background

Plaintiff Dana Rolan ("Rolan") is a beneficiary of her mother's group health plan, which is provided by her mother's employer, St. Peter's Hospital. The New

West Health Plan ("the Plan") is fully-insured by Defendant New West Health Services ("New West"). Rolan was involved in an automobile accident that resulted in her serious injuries requiring medical treatment.

Plaintiff provides a summary of factual background and the state court case history in her Amended Complaint. The automobile accident occurred on November 16, 2007, near Townsend, Montana. Medical expenses were approximately $120,000. The tortfeasor possessed liability insurance through Unitrin Services Group, which accepted responsibility for the accident and paid medical bills of approximately $100,000. However, Rolan had asked *her* health insurer carrier, New West, to pay her medical bills. Rolan alleges that New West either directed Unitrin to pay Rolan's medical bills or to reimburse New West for its payment of Rolan's medical bills (or both). Rolan further alleges that New West did not first determine whether Rolan had been made whole for the entirety of her damages as required by M.C.A. 33-30-1102(4).

In February 2010, Rolan filed suit in the First Judicial District, alleging that New West violated her made-whole rights under Montana law. She sought

restitution of approximately $100,000 in medical benefits that she asserts should have been paid by New West, and compensatory and punitive damages for unfair claims settlement practices. New West answered the complaint and did not defend under ERISA. New West "officials then stated in deposition testimony that the plan was not an ERISA plan." (Doc. 8, Amended Compl. at 3, ¶ 6.) On May 4, 2012, the state district court certified a class action of non-ERISA plan members "whose claims are determinable solely by state law." (Doc. 8, Amended Compl., at 3, ¶ 8.) New West appealed that decision to the Montana Supreme Court, which affirmed the district court's certification order. *Rolan v. New West*, 307 P.3d 291, 371 Mont. 228 (Mont. 2013). According to Rolan, "[o]n October 23, 2013, over three and a half years into the lawsuit and six years since Rolan was deprived of her liability insurance, New West changed its position. It moved to amend its Answer to allege the plan in question was an ERISA plan after all and that therefore, the action is preempted under federal law." (Doc. 8, Amended Compl., at 4, ¶ 9.) The state district court granted New West's motion to amend its Answer. On May 5, 2014, New West moved for summary judgment, "arguing that

3

state courts have no jurisdiction over ERISA plans." (Doc. 8, Amended Compl., at

4, ¶ 11.) According to Plaintiff's Amended Complaint,

> [o]n May 6, 2015, the state district court granted New West's motion for summary judgment in part. It held that Rolan was enrolled in an ERISA plan and that the state court lacked jurisdiction to adjudicate ERISA claims. The Court recognized New West's ERISA plans, like Rolan's, which were not self-funded, are subject to Montana's made-whole laws. It held Rolan had a right to amend her Complaint to recast claims as ERISA claims and then her amended claims would be removed to federal court. The Court did not rule on Rolan's position that members of the certified class, who were in non-ERISA plans, continued to have state law claims. The Court held New West was responsible for Rolan's attorney fees and costs incurred over the four plus years in which New West had misrepresented that Rolan's plan was non-ERISA and governed by Montana law.

(Doc. 8 at 4-5, ¶ 12.) Rolan filed an Amended Complaint, now stating both state

law claims and ERISA claims. On the same day Rolan filed her Amended

Complaint, New West filed its removal papers, all within 30 days after the state

district court ruling.

Removal of the Amended Complaint

New West removed Plaintiff's Amended Complaint to this Court pursuant

to the Court's original jurisdiction under the Employee Retirement Income

4

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

Plaintiff's Amended Complaint (Doc. 8) states the following claims:

1. Count I, "Individual State Law Claim" asserts that New West violated Montana's statutory made-whole law, which provides that no subrogation can occur until after the insured has determined that the injured claimant has been fully compensated for her injuries.[12] Rolan asserts that New West did not perform a made-whole analysis before avoiding payment of benefits. Rolan cites the ERISA Savings Clause that exempts state insurance laws from ERISA express preemption. Rolan asserts that New West has an independent duty to abide by Montana made-whole laws and that complete preemption under ERISA is therefore inapplicable.

2. In Count II, Rolan asserts that she is currently the class representative of a certified class alleging that New West violated

---

[1] "33-30-1101. Subrogation rights. A hospital or medical service plan contract issued by a health service corporation may contain a provision providing that, to the extent necessary for reimbursement of benefits paid to or on behalf of the insured, the health service corporation is entitled to subrogation, as provided for in 33-30-1102, against a judgment or recovery received by the insured from a third party found liable for a wrongful act or omission that caused the injury necessitating benefit payments." M.C.A. § 33-30-1101 (2015).

[2] 33-30-1102. Notice–shared costs of third-party action–limitation. ... (4) The health service corporation's right of subrogation granted in 33-30-1101 may not be enforced until the injured insured has been fully compensated for the insured's injuries." M.C.A. § 33-30-1102 (2015).

their made-whole rights and entitling them to the same relief.  A Certification Order issued by the First Judicial District Court is attached to the Amended Complaint.  It alleged that New West either permitted or forced tortfeasors and their insurance companies to pay medical bills for the class, rather than New West, all without any attempt by New West to make any made-whole determination.

3.  In Count III, Rolan sets forth a subclass of members who are in non-ERISA plans and asserts state law remedies under the Unfair Settlement Practices Act ("UTPA"), M.C.A. §§33-18-201, et seq., for this subclass.  Count III alleges that New West violated the requirement that it promptly, fairly and equitably pay claims and conduct a reasonable investigation of claims.  This subclass of state claims is asserted to be remedied by punitive damages upon a jury finding of malice or fraud.

Rolan groups the following counts under the subtitle "Concurrent Jurisdiction Alternative Claims."

4.  In Count IV, Rolan asserts an "Individual ERISA Payment Claim," seeking concurrent jurisdiction by the state district court pursuant to § 502(a)(1)(B) of ERISA.[3]  Rolan states that she is

_____

[3] "§ Civil Enforcement.
(a) Persons Empowered to Bring a Civil Action.  A civil action may be brought–
    (1) by a participant or beneficiary–
        (A) for the relief provided for in subsection (c), or
        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

entitled to payment of benefits and clarification of her rights to benefits. Rolan seeks her benefits, interest thereon, attorney fees and costs.

5. In Count V, Rolan asserts a "Class Action ERISA Payment Claim." This count alleges on behalf of all class members paying premiums to ERISA plans that New West violated their made-whole rights and they are therefore entitled to ERISA benefits, interest, and attorney fees and costs. Plaintiff points out that this claim can be resolved by state courts pursuant to concurrent jurisdiction provided by ERISA.[4]

The next group of counts is under the subtitle "Alternative Claims Recast as ERISA Claims." Rolan states that, in compliance with the state district court's Order of May 6, 2015," she is recasting all her claims as ERISA claims, pleading

---

benefits under the terms of the plan; . . . .
29 U.S.C. § 1132.

[4] "1329(e) Jurisdiction.
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
29 U.S.C. § 1329(e)(1).

in the alternative:

> 6.  In Count VI, Rolan asserts that she is owed over $100,000 in ERISA benefits, with interest dating back to when the benefits should have been paid to her in 2007, and attorney fees and costs.

> 7.  In Count VII, Rolan asserts that a class should be certified pursuant to Fed. R. Civ. P. 23 for all members of ERISA New West plans funded by premiums (*i.e.*, not self-insured plans).

> 8.  Count VII seeks equitable relief pursuant to either 502(a)(1)(B) for payment of benefits and/or 502(a)(3) for payment of restitution, plus interest and attorney fees and costs.  Rolan is to be the class representative when this class is certified by this Court.

## Motion for Remand

Both in her Motion for Remand[5] and in her Amended Complaint, Plaintiff

seeks relief in the form of a remand to state court "on the ground that ERISA

preemption does not apply."  (Doc. 8, Amend. Compl. at 16, ¶¶ 56-57.)  Plaintiff

believes that either all of her original claims (Counts I through III) or some

---

[5]  "Since there is neither express nor complete preemption, the state court has full jurisdiction over all state law claims that New West violated the made-whole laws.  Therefore, the case should be remanded in its entirety."  (Doc. 4, Pl.'s Brief in Supp. at 7.)

(alternative Counts IV (Rolan's individual ERISA claim) and V (ERISA class action)) of the counts should be remanded. If the case is to stay in federal district court, however, Plaintiff intends to proceed under Counts VI (Rolan's individual ERISA claim) and VII (ERISA class action).

ERISA Benefit Claims

ERISA provides that both federal and state district courts have concurrent[6]

---

[6] § 1132. Civil enforcement.
...
(e) Jurisdiction. (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 101(f)(1). State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
...
(f) Amount in controversy; citizenship of parties. The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.
29 U.S.C. §§ 1132(e)-(f).

jurisdiction over a beneficiary's claims "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." ; ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). Besides recovery of benefits under § 1132(a)(1)(B), ERISA remedies under § 502(a) can include an injunction, other equitable relief, and attorney fees and costs. 29 U.S.C. § 1132(a)(3), (g).

ERISA Preemption
(Complete/Express and Conflict/Obstacle)

In this case, Rolan's original Complaint filed in state district court only asserted state law claims, not ERISA claims. Generally, such a case lacks federal question jurisdiction. However, under the artful pleading doctrine, which is an exception to the well-pleaded complaint rule, if a plaintiff's state law claims are completely, or expressly, preempted by § 514(a) of ERISA,[7] the complaint "is

---

[7] "(a) Supersedure; effective date. . . . the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate

converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).  This is so because, in *Metro. Life*, 481 U.S. at 65, the Supreme Court held that when a suit composed of state law claims "relates to" an ERISA plan within the meaning of ERISA § 514(a), the suit is *necessarily* federal because Congress intended to occupy the field of employee benefits law.  Congress announced its intent to completely occupy the field of employee benefit plans when it enacted ERISA 514(a) [29 U.S.C. § 1144(a)], providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

---

to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS §1003(b)].  This section shall take effect on January 1, 1975.  29 U.S.C. § 1144(a).

<u>Express/Complete Preemption</u>

Under the complete preemption doctrine, these state-law claims are deemed to "arise under" federal law and on that basis may be removed to federal court despite their presentation as state claims. *Metro. Life*, 481 U.S. at 64-65 (announcing complete preemption doctrine under ERISA). When state law claims are thus preempted, a federal claim is substituted in its place. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). To determine if Rolan's claims are completely preempted, we must determine whether her claims relate to an employee benefit plan within the scope of ERISA's civil enforcement provision, which is ERISA § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). "If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Marin Gen. Hosp.*, 581 F.3d at 945 (quoting *Metro. Life*, 481 U.S. at 65-66). "Congress had 'clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable

to federal court." *Id.* (quoting *Metro. Life*, 481 U.S. at 66).

The two-part test provided by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), is explained as follows:

> [W]here the individual is entitled to coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA 502(a)(1)(B).

542 U.S. at 210 (citation omitted). The court should examine the factual allegations, the statute(s) upon which the state law claim is founded, and the plan document. *Id.* at 211. The labels utilized by the plaintiff are immaterial. *Id.* at 214-15. Under this test, complete preemption is triggered if (1) "an individual, at some point in time, could have brought [the] claim under ERISA 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210.

13

In *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946, 950 (9th Cir. 2009), the Ninth Circuit analyzed whether complete preemption supported defendant's removal by applying the *Davila* two-part test to plaintiff's state law claims. In *Marin*, the plaintiff hospital asserted state-law claims for breach of contract, negligent misrepresentation, and quantum meruit in state court against an ERISA plan administrator. The factual allegations included an allegation that a hospital employee had telephoned the plan administrator to confirm that ERISA health insurance benefits were available to a prospective patient. The plan administrator's employee orally verified the patient's coverage *and* promised to pay 90% of the patient's medical expenses, which eventually totaled $178,926. Instead of paying 90% as allegedly promised, the plan administrator paid only 26% of the expenses. The district court ruled that the hospital's remedy was by means of an ERISA claim, eventually dismissing the hospital's complaint. On appeal, the Ninth Circuit panel reversed, concluding that the oral promise allegedly made by the plan administrator was an independent legal basis giving rise to a duty to pay the hospital, and one that was completely

14

independent of the ERISA benefit plan.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), the Supreme Court considered whether plaintiffs could bring state claims under the Texas Health Care Liability Act ("THCLA") for their plans' refusal to provide requested medical services as had been recommended by their physicians. The Court noted that upon denial of benefits, plaintiffs could have paid for the services themselves and then filed a federal suit pursuant to ERISA to claim benefits or plaintiffs could have immediately sought a preliminary injunction. *Id.* at 211. In asserting the violations, the plaintiffs specifically cited two statutes in the THCLA that set forth the duty of ordinary care owed to an insured by a health insurance carrier or health maintenance organization. The plaintiffs argued that "this duty of ordinary care arises independently of any duty imposed by ERISA or the plan terms... [so that] any civil action to enforce this duty is not within the scope of the ERISA civil enforcement mechanism." *Id.* at 212.

However, the Supreme Court rejected this argument, stating that the

statutory duty applicable under the THCLA did "not arise independently of ERISA or the plan terms." *Id.* Instead, any liability created by the THCLA would exist *"only* because of petitioners' administration of ERISA-regulated benefit plans. [The plan administrators'] potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans." *Id.* at 213.

In *Davila* the Supreme Court also compared those facts to *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), wherein a state law claim was not preempted by the Labor Management Relations Act ("LMRA") § 301 because the state claim was based on breach of an individual employment contract, not the similar breach of a collective-bargaining agreement. Similarly, the Court compared the *Davila* facts to those in *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 217, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), a state-law bad-faith insurance claim that was preempted by LMRA § 301 because "the *duties imposed* and *rights established* through the state tort . . . derive[d] from the rights and obligations established by the contract." *Lueck*, 471 U.S. at 217 (emphasis added).

16

Similarly, in this case, New West's duty to pay benefits and Rolan's right to the payment of benefits derive not from an independent state law but from the ERISA plan itself. Montana's made-whole statute, standing alone, does not entitle Rolan to benefits; it is the ERISA plan that entitles Rolan to benefits. That Montana statute merely provides one basis for interpreting the ERISA plan. Similarly, the gravamen of any violation of Montana's Unfair Settlement Practices Act, §§ 33-18-201, M.C.A., *et seq.*, would be the failure to "promptly, fairly and equitably pay" Rolan's claim for benefits under the ERISA plan. Essentially, the rights claimed pursuant to Montana law are dependent upon the existence of the ERISA plan and not independent from it. Rolan's citation to *Wurtz v. Rawlings Co., LLC,* 761 F.3d 232 (2nd Cir. 2014), is unavailing because, in that case, the plaintiffs were not seeking benefits under ERISA at all but merely attempting to protect their tort settlements from the insurer's claim for reimbursement.

Therefore, Rolan's state causes of action fall within the scope of ERISA 502(a)(1)(B) (*i.e.,* a claim for benefits under an ERISA plan without a legal right independent of the ERISA plan), and are therefore completely preempted by

ERISA and removable to federal district court.

Conflict/Obstacle Preemption

General state laws may be preempted even if they do not "relate to" an employee benefits plan, such as when they provide additional remedies for conduct violating ERISA. A state law is an obstacle to ERISA and therefore preempted if it "duplicates, supplements, or supplants" ERISA's civil enforcement remedies, because such a law conflicts with congressional intent to make ERISA's enforcement mechanism exclusive. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 2009 (2004); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51-54 (1987). This is generally known as conflict or obstacle preemption.

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), for example, the plaintiff asserted a common-law action seeking emotional distress and punitive damages for bad-faith insurance claims processing (as does Rolan in this case), but the Supreme Court held that such remedies not found in ERISA are pre-empted. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if

ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (quoting *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (1990)). Using state law to supplement ERISA remedies would pose an obstacle to ERISA's policy choices, and the Supreme Court referred to this type of preemption as "conflict preemption." *Ingersoll-Rand*, 498 U.S. at 486.

In addition, because one of the main objectives of ERISA was interstate uniformity in the federal regulation of employee benefit plans, state statutes setting specified procedures for claim processing, such as a New Jersey statute prohibiting offsetting worker compensation payments against pension benefits in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), have been set aside because they are an obstacle to uniform plan administration. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987) ("The employer therefore was required to accommodate conflicting regulatory schemes in devising and operating a system for processing claims and paying benefits–precisely the burden that ERISA pre-emption was intended to avoid."). The Court in *Fort*

19

*Halifax* described the underlying policy as follows:

> It is thus clear that ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations. See, *e.g.*, H.R.Rep. No. 93-533, p. 12 (1973), U.S. Code Cong. & Admin. News 1974, pp. 4639, 4650 ("[A] fiduciary standard embodied in Federal legislation is considered desirable because it will bring a measure of uniformity in an area where decisions under the same set of facts may differ from state to state.").

*Id.* at 11.

Insurance Savings Clause

This does not necessarily mean, however, that the Montana statutes asserted by Rolan are without effect as to the New West plan at issue. The Montana statutory limitations on insurance subrogation could either be impliedly preempted by ERISA by means of conflict/obstacle preemption (either as to substantive law or remedies) or, on the other hand, might be protected by ERISA's Savings Clause

and applied to interpret the plan during the review of Rolan's benefit claim.[8]

Generally speaking, self-funded ERISA plans are protected from state insurance laws by the "Deemer Clause," 29 U.S.C. 1144(b)(2)(B), ERISA 514(b)(2)(B). In this case, however, the St. Peter's plan is fully insured, so that state insurance laws are generally applicable due to ERISA's Savings Clause, although conflict/obstacle preemption may still be applied to state insurance laws.[9]

---

[8] ERISA's Savings Clause provides that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. 1144(b)(2)(A); ERISA 514(b)(2)(A).

[9] The Savings Clause thus permits state insurance laws to apply to fully-insured plans, so the Savings Clause "leaves room for complementary or dual federal and state regulation," but nevertheless ERISA may still pre-empt a state insurance law if "the two regimes cannot be harmonized or accommodated." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 98 (1993) (citing the federal Supremacy Clause). Discussing the Savings Clause, the Supreme Court states that "[s]tate law governing insurance generally is not displaced, but "'where [that] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress' federal preemption occurs." *Id.* at 99 (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). Two Supreme Court cases involving insurance claims handling laws protected by the Savings Clause both demonstrate that the Court continued its preemption review despite the Savings Clause to decide that the laws did not undermine ERISA's

The Supreme Court's test for deciding in the first instance whether a state

insurance law is protected by the Savings Clause is (1) whether the state law is

"specifically directed toward entities engaged in insurance", and (2) whether the

state law "substantially affects the risk pooling arrangement between the insurer

and the insured." *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 341-42,

123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) (making a "clean break from the

McCarran-Ferguson factors"); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842

(9th Cir. 2009). This Court need not decide today whether Rolan's central claim

for ERISA plan benefits (predicated on Montana's limitation on subrogation,

M.C.A. § 33-30-1102(4)), meets this test for enforceability under the Savings

Clause as that crucial issue has not been briefed by the parties and is not

---

objectives. *See UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 377 (1999) ("[T]he
[state] notice-prejudice rule complements rather than contradicts" ERISA's
claims-handling rules and thus provides the "relevant rule of decision" for
plaintiff's benefits claim); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355,
375-80, 384-86, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (noting that the state
insurance law did not attempt to supplement or supplant ERISA remedies and
recognizing "a limited exception from the savings clause for alternative causes of
action and alternative remedies....").

determinative of the remand motion.


Removal Pursuant to 28 U.S.C. § 1141 & § 1146

An action is removable to federal court if the claims could have originally

been filed in federal court. 28 U.S.C. § 1441(a). Defendants must show by a

preponderance that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th

Cir. 1992) (citation omitted). Any doubts about the propriety of removal should

be resolved in favor of remand. *Id.*

Having already determined that this Court has concurrent subject matter

jurisdiction over Rolan's ERISA claims, the Court next considers whether removal

is proper in this case from a procedural standpoint. Prior to removal, this case was

litigated in state court for four years, including one interlocutory appeal to

Montana's Supreme Court. Given that the Court believes that the case was

removable from the very first filing, the Court must determine whether a four-year

delay in removal is timely. Specifically, the Court must apply section §1446(b)(1)

of Title 28, which provides that removal must occur within 30 days after formal

service of process on the removing defendant. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999). Section 1446(b) also provides that, *in a case that was not initially removable*, the removal must be accomplished within thirty days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." 28 U.S.C. § 1446(b)(3) (emphasis added).

In the instant case, the delay in removal appears to have multiple underlying causes. First, there was New West's inexplicable confusion over whether its own plan was or was not an ERISA plan. Then, after learning in 2013 that the plan at issue was an ERISA plan (and after the Montana Supreme Court affirmed the district court's class certification), New West busied itself in state court litigation. According to Plaintiff's amended complaint, on October 23, 2013, (over three years into the state court litigation), New West informed the state district court that the plan was in fact an ERISA plan subject to federal preemption. (*See* Doc. 8, Amended Complaint, § 9.) Instead of filing for removal within 30 days, however,

New West filed a motion to amend its answer to assert ERISA preemption. The state district court granted New West's motion to amend, and thereafter New West still did not remove but instead moved for summary judgment on jurisdictional grounds. New West did not file for removal until after May 2015, when the state district court (1) granted partial summary judgment to New West, (2) held that it lacked jurisdiction to adjudicate Rolan's ERISA claims, and (3) instructed Rolan to amend her complaint to recast her claims under ERISA to permit removal to federal district court.

However, under the artful pleading doctrine and the exception provided by complete preemption under ERISA, Rolan's complaint was removable from its first filing. Certainly, by October 2013, when New West apparently realized that the employee welfare plan was an ERISA plan, New West should have then understood that it could remove Rolan's complaint to federal court. The fact that New West waited almost two years to file for removal causes this Court to question whether New West should be precluded from such an untimely removal under an estoppel or waiver theory.

A similar circumstance was considered in *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249 (9th Cir. 1989). In that case, the plaintiff filed a state court action alleging breach of the implied covenant of good faith and fair dealing and wrongful denial of the existence of an insurance contract. The plaintiff alleged that she had obtained through her employer a group health insurance policy, but that the defendant insurer later rescinded the insurance policy on the basis of "unadmitted medical history" (but allegedly to avoid paying her claims for benefits).

The plaintiff in *Cantrell* filed her original complaint in October 1985, against Great Republic Ins. Co.,but the Great Republic *Life* Insurance Company (a Washington corporation) answered the complaint in January 1986. The same defense counsel represented both entities. In May of 1986, Great Republic Ins. Co. admitted that it had issued a "certificate of insurance . . . for group medical expense insurance coverage to plaintiff." In June of 1986, Great Republic *Life* Ins. Co. admitted that a specified numbered certificate of insurance had been issued for the plaintiff on a date certain in 1981. Over a year later, in September,

1987, plaintiff sent a proposed amended complaint not changing her claims but naming Great Republic *Life* Ins. Co. as a defendant and adding herself as administrator of her daughter's estate. Counsel for both insurance carrier entities declined to stipulate to the filing of the amended complaint, so plaintiff filed a motion for leave to amend, which was granted on October 21, 1987. On November 20, 1987, both defendants filed their removal papers in federal district court citing the district court's original jurisdiction under ERISA. The defendants asserted that the removal was timely (within the 30-day removal period) because of the addition of new parties in the amended complaint. Plaintiff filed for remand back to state court asserting that there was no federal original jurisdiction, but the remand motion was denied by the federal court because ERISA preemption overcame plaintiff's artful pleading of state causes of action.

On appeal, the Ninth Circuit panel agreed that the district court had original jurisdiction pursuant to ERISA over plaintiff's state claims and that therefore her action was removable. However, the panel reversed the district court's denial of remand, deciding that the removal was untimely because it was "clear that

Cantrell's *original* complaint was removable." *Cantrell*, 873 F.2d at 1253

(emphasis in original). The original complaint was filed on October 8, 1985, and

the removal papers were filed on November 20, 1987, far in excess of the thirty-

day removal period set by 28 U.S.C. § 1446(b). The panel noted that there was no

evidence that the defendant insurers were ignorant of the ERISA component prior

to the filing of the amended complaint. *Id.* at 1256. In fact, in their brief opposing

remand, the defendant insurers asserted that no discovery was needed to show that

this was an ERISA claim on an ERISA plan. *Id.* at 1255, n.11. The Ninth Circuit

panel simply could not accept that defendants were entitled to "have it both

ways–to permit them to remove the action on the basis of ERISA preemption but

excuse them from compliance with the thirty-day removal period...." *Id.* at 1255.

The panel concluded that by their long delay the defendant insurers had waived

their right to remove the ERISA case from state court.

Similarly, here, four years elapsed between the filing of the original

complaint in state court and the filing of the removal papers. In between those two

points, there was a class certification and an interlocutory appeal to the Montana

28

Supreme Court.  Certainly, New West had access to the plan documents from the outset.  At some point in the litigation, New West decided that the case should be governed by ERISA, and New West began to brief and argue motions to that effect, *years* before New West filed its removal papers.  However, the case did not become removable because the state district court ordered Rolan to amend her complaint to rewrite her claims under ERISA.  The case became removable when Rolan filed her initial complaint stating claims that were preempted by ERISA, and that fact was easily ascertainable by New West.  Certainly, by the time that New West began asserting ERISA arguments to the state district court, New West had ascertained that the case was removable, so there is no mistake of fact argument available here.  In any event, section 1446(b)(3) makes clear that a case may be removed during its pendency in state court *only* "if the case stated by the initial pleading is *not* removable...."  28 U.S.C. 1446(b)(3) (emphasis added).  "Changes to a complaint that creates a new basis for removal do not undo the original waiver.... [and] subsequent events do not make it 'more removable' or 'again removable.'" *Samura v. Kaiser Foundation Health Plan, Inc.*, 715 F.Supp.

29

970, 972 (N.D. Calif. 1989) (quoting *Hubbard v. Union Oil Company*, 601

F.Supp. 790, 795 (S.D. W.Va. 1985)).  Certainly, the amended complaint did not

change the nature of Rolan's original claims for removal purposes.

In this case, and because the removal statutes are strictly construed against

removal, the Court finds that New West's removal was untimely and remand is

warranted.  However, because New West was instructed to remove the case by the

state court, the Court will not award fees and costs against it.

This remand order may be appealable to the Court of Appeals for the Ninth

Circuit pursuant to 28 U.S.C. § 1291 and *Pelleport Investors, Inc. v. Budco*

*Quality Theatres, Inc.*, 471 F.2d , 273, 276-78 (9th Cir. 1984).  Accordingly,

IT IS HEREBY ORDERED that Plaintiff Rolan's Motion for Remand is

GRANTED, and Plaintiff's Motion for Hearing is DENIED.  The Clerk shall mail

the clerk of the First Judicial District, Lewis and Clark County, a certified copy of

this remand order.

Dated this 29th day of February, 2016.

CHARLES C. LOVELL

SENIOR UNITED STATES DISTRICT JUDGE